## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANESHA PARKER**, <br> **Plaintiff** <br> v. <br> **DISTRICT OF COLUMBIA;** <br><br> **ROSEBERTE CLERVIL**, <br> 2301 Washington Overlook Drive <br> Fort Washington, MD; <br><br> **U.S. DEPARTMENT OF JUSTICE** <br> 950 Pennsylvania Avenue, NW <br> Washington, DC 20530; <br><br> **UNITED STATES DEPT OF DEFENSE** <br> 1400 Defense Pentagon <br> Washington, DC 20301; <br><br> and <br><br> **CENTRAL INTELLIGENCE AGENCY** <br> Litigation Division, Office of General <br> Counsel, <br> Washington, DC 20505. <br><br> **Defendants.** | **Civil Action No. 21-2523 (CKK)** |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Anesha Parker ("Ms. Parker" or "Plaintiff") brings this civil rights action

seeking monetary and injunctive relief under 42 U.S.C. § 1983 and *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotic* for defendants' violations of Plaintiffs rights

under the Fourth and Fifth Amendments of the U.S. Constitution; the Stored Communications

Act ("SCA") 18 U.S.C. §§ 2701–2712; the Federal Wiretap Act 18 U.S.C. § 2511; and the

Drivers Privacy Protection Act ("DPPA") 18 U.S.C. § 2721-2725.  These civil rights violations

stem from defendants' prohibited conduct under the District of Columbia Whistleblower

Protection Act, D.C. Code §§ 1-615.53, *et seq*., by Plaintiff's former employer the Department

of Youth Rehabilitation Services.

9

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 and §1343 because of civil liberties and Constitutional rights violations under the Fourth Amendment and Fifth Amendment of the United States Constitution, specifically 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*. This Court has supplemental jurisdiction under 28 U.S.C. § 1367, over claims arising under District of Columbia laws because those claims are so related that they form part of the same case or controversy.

2.      Venue is proper under 28 U.S.C. §1391(a)(3) because a substantial part of the acts and omissions giving rise to the claims in this complaint occurred. Florida is the judicial district in which the defendants are subject to personal jurisdiction at the time the action commenced.

## PARTIES

3.      Plaintiff Ms. Parker is a former employee of DYRS, the District's juvenile justice agency.

4.      Defendant District of Columbia (the "District" or "Defendant") is a municipal corporation that is responsible for its cabinet-level agencies, including DYRS.

5.      Roseberte Clervil ("Clervil" or "Defendant") is a resident of Fort Washington, Maryland, and a self-proclaimed spy for the Central Intelligence Agency (CIA) with offices located in Langley, VA.  Clervil is believed to be employed by the U.S. Department of Defense (DoD) with offices in Arlington, Virginia.  At all relevant times, Defendant acted and continues to act under the color of laws of the United States. Clervil is sued in her individual capacity.

6.      U.S. Department of Justice (DOJ) is an agency of the executive branch of the federal government of the United States. Defendant DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

7.      U.S. Department of Defense (DoD) is an agency of the executive branch of the federal government of the United States. Defendant DoD is headquartered in Langley, Virginia.

8.      Central Intelligence Agency (CIA) is an agency of the executive branch of the federal government of the United States. Defendant CIA is headquartered in Washington, D.C.

## STATEMENT OF FACTS

9.     Plaintiff, Ms. Parker, was employed at DYRS as a Management and Program Analyst and worked at 450 H Street N.W., Washington, D.C.

10.     As such, Ms. Parker was tasked with conducting an internal audit of DYRS's gift card distribution program after an external audit report highlighted issues with the program.

11.     During the internal audit, Ms. Parker found that at least 695 gift cards, valued at $20, 260 were unaccounted for and missing documentation of the youth-recipient - - a discrepancy significantly higher than reported in the external auditor's report.  Based on the responses from employees and executives, the Defendants were not aware of the magnitude of the problem.

12.     Ms. Parker reported these findings to high-level agency executives for DYRS.

13.     Over the next few months, Ms. Parker and another employee were requested to provide weekly updates to the high-level agency executives; ongoing issues were reported.

14.     Shortly after, Ms. Parker was instructed to, "stop conducting the internal audit or allow another employee to complete it."  Ms. Parker was advised to call out "sick" from the upcoming check-in meeting.  And on multiple occasions, requests were made for Ms. Parker to submit a letter of resignation.

15.     In April 2019, Ms. Parker reported these issues to the Defendants.

16.     In May 2019, the Defendants reassigned Ms. Parker to a different division.

17.     Shortly thereafter, the Defendants arranged for Ms. Parker and two other employees at DYRS to present the results of the internal audit to the former director of DYRS. After the meeting, the Defendants praised Ms. Parker for her thorough presentation.

18.     Then on July 26, 2019, without explanation or reason, Ms. Parker was permanently transferred from 450 H St. to New Beginnings Youth Development Center (NBYDC) in Laurel, Maryland. Ms. Parker was the only departmental employee and member of the internal gift card audit to be transferred permanently. All other employees, including those responsible for the adverse audit findings, continued working out of the D.C. office.

19.     On August 21, 2019, Ms. Parker participated in an interview with investigators from the Board of Ethics and Government Accountability (BEGA) where she discussed the results of the internal audit and the requests for her resignation.

20.     Early October 2019, Defendants learned of Ms. Parker's participation in the BEGA investigation, and on October 29, 2019, Defendants wrongly marked Ms. Parker as absent without leave (AWOL), even though she was ordered and approved to work a flexible schedule to fulfill duties under her reassigned role.

21.     Ms. Parker provided her supervisor and an HR supervisor documentation of her virtual private network (VPN) login proving that she worked an 8-hour shift however, they refused to withdraw the AWOL notice stating that it could be used as grounds for termination.

22.     Ms. Parker learned that the AWOL notice was following a scheme to create a paper trail to terminate Ms. Parker, evidenced by a handwritten letter by Ms. Parker's supervisor, which indicated: "check badge scans, video footage, mark AWOL, and issue letter of termination by December 11, 2019."

23.     Clervil directed others to unlawfully entered Ms. Parker's home to install hidden recording devices owned by the U.S. government.

24.     Clervil also used her U.S. government credentials to claims Ms. Parker's cell phone from United Arab Emirates' lost in found. On or about November 2021, Plaintiff submitted multiple reports to the C.I.A. but did not receive a response from the agency. Plaintiff submitted a report to the DoD around April/March 2022 but also did not receive a response.

25.     Defendants installed recording and tracking devices on Ms. Parker's vehicles while located in the District of Columbia, Virginia, and Florida.

26.     During the pandemic, the Defendants stripped Ms. Parker of her responsibilities and reassigned them to her colleagues.

27.     Despite being stripped of her responsibilities, Ms. Parker noticed an HR specialist parked outside of her home.  Defendants knew about this employee because during a check-in meeting,

Defendants stated, "we have to do something about," . . . said employee. At some point, the employee was transferred to a different District agency.

28.     In May 2021, Ms. Parker relocated to a different apartment but did not change her address on file with DYRS nor disclose her new address to family or friends.

29.     Yet, the week Ms. Parker returned to the office, her colleagues started following her to and from the office and were able to provide specific details about unique items and private conversations held inside Ms. Parker's new home.

30.     Ms. Parker's colleagues provided specific details about seeing her disrobe; one employee even inquired about a specific cosmetic item Ms. Parker sampled. Concerned for her privacy, Ms. Parker changed her living habits and days later Ms. Parker's colleagues remarked: "she thinks she's safe by hiding in her bathroom."

31.     Ms. Parker colleagues approached her about retracting her statements regarding the reason she was transferred to NBYDC.

32.     Ms. Parker reported these concerns to the Defendants and requested permission to telework for her safety. Defendants advised Ms. Parker to take the day off and denied Ms. Parker's emergency and situational telework requests, despite having approved other employees in the Agency to telework.

33.     Defendants added insult to injury by sending Ms. Parker DYRS' sexual harassment policy, locksmith policy, and electronically monitoring policy. All of these aligned with the issues Ms. Parker was experiencing and complaining about.

34.     In September 2021, Defendants marked Ms. Parker AWOL again and made suggestive remarks about giving Ms. Parker a poor performance evaluation, that could lead to termination.

35.     Defendants intentionally withheld a promotion and pay increase from Ms. Parker. In September 2021, Ms. Parker asked about potential advancement opportunities because the defendants previously alluded to promoting Ms. Parker and had her undergo a second background check-in in 2019. Defendants said that the vacant supervisor position in Ms.

Parker's department would not likely be filled soon.  After this conversation and without notice defendants increased Ms. Parker's pay.

36.     Ms. Parker learned that other employees, whom Defendants used to stalk and harass Ms. Parker, were offered promotions and salary increases.

37.     Defendants directed Information Technology (IT) staff to install spyware or malware on Ms. Parker's work and personal computers and cell phones, so Defendants could intercept, monitor, and record Ms. Parker's electronic communications.  Ms. Parker's noticed that her computers were being remotely accessed and controlled by others.

38.     Defendants gained unauthorized access to Ms. Parker's internet routers, personal contacts, social media accounts, multiple email accounts, bank accounts, and rideshare accounts. Defendants linked Ms. Parker's Apple watch to the Defendants' District-owned Samsung television in the executive's conference room at DYRS to eavesdrop on Ms. Parker's private conversations.

39.     Defendants canceled and transferred Ms. Parker's Florida driver's license out of the state in 2020 without her consent or knowledge.

40.     Defendants disseminated the information unlawfully gathered on Ms. Parker amongst her family, friends, and colleagues.

41.     All the Defendants' actions over three years, created an insoluble, unsafe, hostile work environment and caused Ms. Parker further extreme emotional distress and anxiety.

42.     As a result of the Defendants 'actions, Ms. Parker felt left with no alternative except to resign from DYRS.

43.     Since Ms. Parker filed this lawsuit, resigned, and relocated to Florida, the Defendants continue retaliating against Ms. Parker and violating her civil rights.

44.     Defendants intercept Ms. Parker's incoming and outgoing mail, including Ms. Parker's tax returns mailed to the Internal Revenue Service ("IRS") and correspondence to Ms. Parker.

45.     Defendants fail to process Ms. Parker's unemployment compensation claim, nor has she received notice of the status of her claim since her initial filing in October 2021, despite having filed multiple applications.

46.     Defendants have and continue to cause Ms. Parker's food and drinks to be laced with opiates.  Ms. Parker's three-year-old niece ingested the opiate-laced drink.  She has become malnourished and ill.

47.     Defendants stalk or cause Ms. Parker to be stalked everywhere, including at the grocery store, post office, and doctor's offices.  She does not leave her home for weeks at a time as a result of defendants' ongoing gang-stalking, intimidation, threats and harassment.

48.     Clervil demands to have access to Ms. Parker while she's sleeping, especially after providing opiate-laced meals that will sedate Ms. Parker for hours while Clervil visits to watch her sleep.

49.     Defendant Clervil has and continues to extort Ms. Parker by pretending to disconnect her cell service purportedly under T-Mobile but that is actually under a free or unknown cell provider. Clervil caused a tow-company to pretend to repossess Ms. Parker's personal vehicle, with a "no-knock warrant-repossession" and has demanded her family pay to reclaim it.  One of Ms. Parker's family vehicles has not been returned and Clervil has threatened to sell the vehicle at a public auction, despite receiving about $3000.

50.     Defendants have caused a substantial interference with Ms. Parker's ability to live a normal life and have taken extreme measures to thwart Ms. Parker's whistleblower claims.

### COUNT I
### VIOLATION OF D.C. WHISTLEBLOWER PROTECTION ACT
### (Against District of Columbia Government Defendants)

51.     Plaintiff incorporates by reference paragraphs 1 through 50 as set forth herein.

52.     The DCWPA prohibits, "threatening to take or taking a prohibited personnel action or otherwise retaliating against an employee because of the employee's protected disclosure . . ." D.C. Code § 1-615.53.27.1. § 1-615.52(a)(6).

53.     Ms. Parker was an "employee" of the District of Columbia Government, as defined by D.C. Code § 1-615.52(a)(3).

54.     Ms. Parker made "protected disclosures" by disclosing to supervisors, high-level executives, and a "public body," the Board of Ethics and Governance (BEGA) information that she reasonably believed evidenced gross mismanagement, abuse of authority, misuse or waste of public resources or funds . . .  D.C. Code § 1-615.52.

55.     Ms. Parker's protected disclosures presented gross mismanagement, abuse of authority, misuse, or waste of public resources or funds.  Ms. Parker's protected disclosures were substantial factors that caused the Defendant to engage in "prohibited personnel actions" by "recommending" Ms. Parker resign, threatening termination, reprimanding Plaintiff; involuntarily reassigning Ms. Parker; permanently transferring Plaintiff to NBYDC; failing to promote; or retaliating in any other manner against an employee because that employee makes a protected disclosure . . . D.C. Code § 1-615.52.

56.     Plaintiff would not have experienced these prohibited personnel actions, but for her protected activity of reporting substantial discrepancies with the Agency's gift card program to her supervisors, executives, and BEGA.  Therefore, by Defendant reassigning, transferring, reprimanding, failing to promote, and threatening other adverse personnel action against Plaintiff, Defendant violated the DCWPA.

## COUNT II
## CONSTRUCTIVE TERMINATION

57.     Plaintiff incorporates by reference paragraphs 1 through 50 as fully set forth.

58.     Constructive termination occurs when the working conditions deteriorate, because of employer's conduct, to the point that they become "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."

59.     Defendants' retaliatory and harassing conduct led to deteriorating working conditions, to the point that working for the defendant who requested Plaintiff's resignation, reassignment to a

position with menial or no real duties, and opportunities for advancement.  Also, Plaintiff's work environment consisted of threats, stalking, hacking, invasion of privacy, harassment, and humiliation by the employer was intentional and calculated to force the employee's resignation.

60.     The work environment became sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve her employer.

61.     Defendant's failure to address Plaintiff's repeated complaints about illegal and inappropriate personnel activity should have enabled Defendant to foresee that its inaction would compel Plaintiff to leave.

62.     Therefore, by Defendant's conduct against Plaintiff for nearly 3 years resulted in constructive termination.

**COUNT III**

**VIOLATION OF DRIVER'S PRIVACY PROTECTION ACT, 18 U.S.C. § 2724.**
**(Against All Defendants)**

63.     Plaintiff incorporates by reference paragraphs 1 through 50 as set forth herein.

64.     The DPPA, in 18 U.S.C. § 2724, a person who knowingly obtains, discloses, or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

65.     "Personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address, telephone number, and medical or disability information. 18 U.S.C. § 2725(3).

66.     Defendants knowingly obtained, disclosed or used Plaintiff's "personal information" and/or "highly restricted personal information" for purposes not permitted under the DPPA for purposes not permitted under any exception as set forth under 18 U.S.C. § 2721(a)(1) and therefore violated the DPPA.

67.     As a result of the Defendants' conduct, Plaintiff has suffered and continues to suffer harassment, risk of economic harm or identity theft by virtue of her "personal information" or "highly restricted personal information" being impermissibly obtained, disclosed or used by Defendants.

68.     The court may award: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate.

**COUNT IV**

**VIOLATION OF THE STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701**

**(Against All Defendants)**

69.     Plaintiff incorporates by reference paragraphs 1 through 50 as set forth herein.

70.     The Stored Communications Act (Title II of the ECPA), 18 U.S.C. §§ 2701–2712 provides: A person who (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b). 18 U.S.C. § 2701(a).

71.     Defendants violated the SCA by intentionally using illicit means, including spyware, malware, and device theft to access Plaintiff's stored electronic communications on her personal and work devices without her knowledge or consent.

72.     As a result of Defendant's conduct, Plaintiff was harmed.

73.     The Defendants were not acting under any exception as set forth under 18 U.S.C. § 2701 and therefore violated the SCA.

74.     Under 18 U.S.C.A. § 2707(b) and (c) Plaintiff is entitled to: (1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) actual damages, no less than

$1000, any profits made by the violator, punitive damages, and litigation costs reasonably incurred. 18 U.S.C.A. § 2707(b) and (c).

75.     Further Plaintiff seeks relief against federal defendants, including but not limited to Clervil, under 18 U.S.C.A. § 2707(d).

**COUNT V**

**VIOLATION OF THE FEDERAL WIRETAP ACT 18 U.S.C. § 2511**
**(Against All Defendants)**

76.     Plaintiff incorporates by reference paragraphs 1 through 50 as set forth herein.

77.     The Federal Wiretap Act prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in the investigation of specified types of major crimes. 18 U.S.C. § 2511(a) and (b).

78.     In violation of the Wiretap Act, Defendants intentionally intercepted Plaintiff's communications at her workplace, home and private vehicle.  Defendants also intentionally procured other people to intercept and to endeavor to intercept such communications. Defendants did so by using concealed electronic recording devices that transmit such recordings through a wire or by radio, and these devices were transported through interstate commerce when purchased by Defendants and/or when transported to Plaintiffs' private homes and vehicles in the District of Columbia, Virginia, Maryland, and Florida.

79.     Defendants intentionally intercepted the oral and electronic communications when they directed others to record private conversations without her knowledge or consent; hacked Plaintiff's devices; monitored contemporaneously transmitted emails, and unlawfully placed listening devices in Plaintiff's homes and vehicles.  Plaintiff had every reason to believe the conversations would not be subject to interception since they were inside Plaintiff's private homes, vehicles, and personal workspace. 18 U.S.C. § 2511(2)(d).

80.     Recordings were not covered by one-party consent exception because communications were intercepted for the primary purpose of committing criminal and tortious acts including but not limited to 1) mail fraud; 2) identity theft; 3) blackmail; 4) stalking; and 5) unlawful entry; 6)

intentional inflicting emotional distress or other harm; 7) constructive termination; and 8) tortious interference. 18 U.S.C. § 2511(d).

81.     Plaintiff suffered damages as a result of Defendant's violations.

82.     Plaintiff is authorized to seek injunctive relief, civil damages (including both actual and statutory damages), punitive damages, and reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 2520.

**COUNT VI**

***42 U.S.C. § 1983* CIVIL RIGHTS VIOLATION UNDER THE FOURTH AMENDMENT**
**(Against District of Columbia Defendants)**

83.     Plaintiff incorporates by reference paragraphs 1 through 50 as set forth herein.

84.     Defendant's actions as set forth above constitute unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution, including but not limited to Defendants' actions unlawfully entering Plaintiff's homes in Virginia; installing government-issued recording and tracking devices in Plaintiff's homes and vehicles; hacking and/or cloning Plaintiff's phone; monitoring Plaintiff's phone calls and text messages; recording Plaintiffs' communications without a warrant and where no party to the communication consented to the recording; recording in homes and other places where Plaintiff had a reasonable expectation of privacy against video and audio recording.

**COUNT VII**

***BIVENS* VIOLATION UNDER THE FOURTH AMENDMENT**
**(Against United States Government and Clervil)**

85.     Plaintiff incorporates by reference paragraphs 1 through 48 as set forth herein.

86.     The Fourth Amendment provides that people have a right to be secure in their persons against unreasonable searches and seizures, that warrants shall not be issued but upon probable cause, and that the place of search must be described with particularity.

87.     Defendant Clervil, acting in concert and jointly and severally through affiliates and agents violated the Fourth Amendment to the U.S. Constitution, as well at the above-mentioned

20

statutes when they unreasonably searched and seized and continue to search Ms. Parker's homes, vehicles, cellphones, laptops and other electronic records without a warrant and probable cause.

88.     Defendant, while acting under color of law, knew or should have known that their impermissible searches and seizures violated Ms. Parker's clearly established rights under the Fourth Amendment of the United States Constitution.

89.     As a direct and proximate cause of Defendants' actions, Ms. Parker has suffered economic and non-economic damages, thus entitling Ms. Parker to punitive damages

**COUNT VII**

**FEDERAL TORT CLAIMS ACT 28 U.S.C. §§ 1346, 2671-80**

90.     Plaintiff incorporates by reference paragraphs 1 through 50 as set forth herein.

91.     The conduct of the CIA/DoD employees acts were intentional overt act to deprive Plaintiff of her right to possession of her cell phone, emails, and driver's license. Also, defendants overt conduct for over 3 years is extreme and outrageous and defendants intended to cause Plaintiff to suffer emotional distress.

92.     As a proximate result of said conduct, Plaintiff has suffered and continues to suffer extreme mental distress, humiliation, anguish, as well as economic losses.

93.     Under the Federal Tort Claims Act, the United States is liable for these actions.

94.     Plaintiff has exhausted any and all available administrative remedies.

95.     Plaintiff has a legal right under the Federal Tort Claims Act, codified 28 U.S.C. § 1346 (b), to obtain the monetary and injunctive relief he seeks against the United States of America. the Federal Tort Claims Act, 28 U.S.C. § 1346 (b).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for the following relief: an award of back pay, front pay, punitive damages, and monetary damages in an amount to be determined at trial; all other relief that is available at law or equity, including litigation costs; issuance of an order of protection

against individual defendants and those acting in concert or participation with them; enjoin enforcement of D.C. Official Code § 51–109, specifically by ordering the District to process Plaintiff's unemployment compensation.

## JURY DEMAND

Plaintiff demands trial by jury in this action.

I declare under penalty of perjury that the foregoing is true and correct.


Date: June 13, 2022

Respectfully submitted,


/s/ Anesha Parker

Anesha Parker, *pro se*

8402 Marlanas Place

Tampa, FL 33637

ARP928@hotmail.com