**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ANESHA PARKER,**

*Plaintiff,*

v.

**DISTRICT OF COLUMBIA,**
**U.S. DEPARTMENT OF JUSTICE**
**LINDA HARLLEE-HARPER,**
**SHANIECE JAMES,**
**ROSEBERTE CLERVIL,**

*Defendants*

**1:21-cv- 02523 (CKK)**

DRAFT

**PLAINTIFF'S PROPOSED THIRD AMENDED COMPLAINT**

Plaintiff Anesha Parker (Ms. Parker or Plaintiff) sues the Defendants under the following theories: the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.53, et seq. (DCWPA) (*Count I*); Constructive Termination (*Count II*); the District of Columbia Unemployment Compensation Act, D.C. Code § 51-110 (the "Act") (*Count III*); Social Security Act, 42 U.S.C. § 503 (*Count IV*); Due Process Clause of the Fifth Amendment of the U.S. Constitution (*Count V*); the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-25, (DPPA) (*Count VI*); the Federal Wiretap Act, 18 U.S.C. § 2511 (FWT) (*Count VII*); the Stored Communications Act, 18 U.S.C. § 2701(SCA) (*Count VIII*); 42 U.S.C. § 1983 for violations of the Fourth Amendment of the U.S. Constitution (*Count IX*) and 42 U.S.C. § 1983 for violations of the Fifth Amendment of the U.S. Constitution (*Count X*).

**JURISDICTION AND VENUE**

1. Jurisdiction is proper under 28 U.S.C. § § 1331 and 1343 over federal and constitutional law claims in Counts IV – IX. This Court has supplemental jurisdiction under 28 U.S.C. § 1367

over District of Columbia law claims, in Counts I – III, because those claims arise from the same case or controversy as the federal law violations.

2. Venue is proper under 28 U.S.C. § 1391.

**PARTIES**

3. Plaintiff Anesha Parker ("Parker") is a United States citizen and former employee of the DYRS, the District of Columbia's juvenile justice agency.

4. District of Columbia Government is the (the "District" or "Defendant") is a municipal corporation that is responsible for its cabinet-level agencies, including DYRS.

5. U.S. Department of Justice (DOJ) is an agency of the executive branch of the federal government of the United States. Defendant DOJ is headquartered at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

DRAFT

6. Linda Harllee-Harper ("Defendant" or "Harper") is a resident of Washington, D.C. and currently serves as the Director of Violence Interrupters Program. At relevant times during the complaint, Harper served as the Deputy Director of DYRS. Harper and the other individuals are members of the same sorority or affiliated with the same organizations. At all relevant times, Defendant acted and continues to act under the color of laws of the United States. Harper is sued in her individual capacity.

7. Shaniece James ("Defendant" or "James") is a resident of Washington, D.C. and is believed to be residing Pinellas County. James is believed to be employed by federal law enforcement or the U.S. intelligence community. James and the other individuals are members of the same sorority or affiliated with the same organizations.

8. Roseberte Clervil ("Defendant" or "Clervil") is a resident of Fort Washington, Maryland, and a self-proclaimed spy for the Central Intelligence Agency (CIA). Clervil is believed to be employed by the U.S. Department of Defense. Clervil and the other individuals are members of

the same sorority or affiliated with the same organizations. At all relevant times, Defendant acted and continues to act under the color of laws of the United States. Clervil is sued in her individual capacity.

**FACTS**

9. Ms. Parker was employed as a Management and Program Analyst with DYRS.

10. DYRS tasked Ms. Parker with conducting an internal audit of DYRS's gift card distribution program after an internal report highlighted issues with the program.

11. During the internal audit, Ms. Parker found that many gift cards were unaccounted for and missing documentation of the youth recipient.

12. Ms. Parker shared this information with high-level executives at DYRS.

13. Afterwards, Ms. Parker was instructed to stop conducting the internal audit or allow another employee to complete it, she was advised to call out "sick" from an upcoming check-in meeting, and that requests were made that she submit a letter of resignation.

DRAFT

14. In April 2019, Ms. Parker reported these issues to the Defendants.

15. Shortly thereafter, Ms. Parker was transferred elsewhere in DYRS.

16. Within a few months of her transfer, Ms. Parker and two other employees at DYRS presented on the results of the internal audit, which was met with praise.

17. On or about July 26, 2019, Ms. Parker was then transferred to New Beginnings Youth Development Center (NBYDC) in Laurel, Maryland.

18. In August 2019, Ms. Parker participated in an interview with investigators from the Board of Ethics and Government Accountability (BEGA) where she discussed the results of the internal audit and the requests made for her resignation.

19. On information and belief, in October 2019, Defendants learned of Ms. Parker's participation in the BEGA investigation.

20. On October 29, 2019, Defendants wrongly marked Ms. Parker as Absent Without Leave (AWOL) as part of a plan to create a paper trail to terminate her, as evidenced by a handwritten letter by Ms. Parker's supervisor.

21. Defendants stripped Ms. Parker of her responsibilities and reassigned them to her colleagues.

22. Ms. Parker was marked AWOL in later months without justification.

23. Defendants made suggestive remarks about giving Ms. Parker a poor performance evaluation that could lead to termination.

24. Ms. Parker felt left with no alternative but to quit after Defendants made work conditions unbearable by harassing, surveilling, and threatening to take disciplinary action.

25. Between October 2021 and May 2022, Ms. Parker filed eight (8) unemployment claims with the Department of Employment Services (DOES). Ms. Parker completed weekly certifications and met the threshold statutory requirements.

26. Nonetheless, Ms. Parker did not receive her benefits or a determination letter from DOES, which is necessary to initiate an appeal at the Office of Administrative Hearings.

27. In July 2022, Ms. Parker filed an appeal with the Office of Administrative Hearings (OAH) but was advised a hearing date could not be schedule without a Claims Examiner's Determination.

28. Ms. Parker requested a determination letter from DOES and was advised to email her request, which she did. A determination letter was never provided.

29. Now according to DOES's website, Ms. Parker may not be monetarily eligible as the benefit year ended on October 3, 2022.

DRAFT

30. Defendants canceled and transferred Ms. Parker's Florida driver's license out of the state without her consent.

31. Defendants intercepted Ms. Parker's incoming and outgoing mail.

32. Defendants installed recording and tracking devices on Ms. Parker's vehicles in the District of Columbia, Virginia, and Florida.

33. Ms. Parker's colleagues started following her to and from the office and could provide specific details about items and private conversations held inside Ms. Parker's homes and her families' homes.

34. Ms. Parker's colleagues provided specific details about seeing her disrobe, one employee asked about a specific cosmetic item Ms. Parker sampled, and her colleagues remarked: "she thinks she's safe by hiding in her bathroom."

35. Defendants hacked, and/or cloned Ms. Parker's Apple iPhone.

36. With this device, Defendants accessed, intercepted, and monitored Ms. Parker's calls and text messages.

37. Defendants gained unauthorized access to Ms. Parker's internet routers, personal contacts, social media accounts, multiple email accounts, bank accounts, and rideshare accounts, and they linked Parker's Apple watch to the Defendants' District-owned Samsung television in the executive's conference room at DYRS to eavesdrop on Ms. Parker's private conversations.

38. Around the time Ms. Parker filed this suit, her email account ARP928@icloud.com used to register for a PACER account and that stored evidence related to this case was hacked. Ms. Parker encountered the following error message: "Could Not Sign In – The operation couldn't be completed. (AKAuthenticationError error – 7003.)." [Exhibit 1].

DRAFT

39. To date, Ms. Parker has been unsuccessful with reclaiming this account, as well as others, because the security verification credentials have been changed to information not provided by Ms. Parker.

40. Defendants caused Ms. Parker's and her family's food from restaurants and supermarkets to be laced with opiates.

41. Ms. Parker, who is drug and alcohol-free, tested positive for a combination of methamphetamine, benzodiazepines, phencyclidine, buprenorphine, and oxycodone after eating food from restaurants and supermarkets.

42. All of the food Ms. Parker receives from restaurants and grocery stores alike, causes Ms. Parker to experience, *inter alia*, either tachycardia or a euphoric state. As a result, Ms. Parker has suffered from gastrointestinal issues, and infections; she has lost at least 46 pounds in the last 6 months.

43. Defendants rented the townhome adjoined to Ms. Parker's home in Tampa and posted at least one or more men from the District to conduct 24-hour surveillance of Ms. Parker.

DRAFT

44. Using threats and intimidation, Defendants and their associates enter Ms. Parker's home and bedroom while she sleeps from Defendants' laced and/or poisoned food.

45. Defendants have threatened the lives of Ms. Parker and her family.

46. Defendants publicly disseminate the information unlawfully gathered on Ms. Parker.

47. Defendants stalk or cause Ms. Parker to be stalked everywhere she goes.

48. Ms. Parker has suffered extreme emotional distress as a result of Defendants actions.

**COUNT I**
**VIOLATION OF D.C. WHISTLEBLOWER PROTECTION ACT**

49. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

50. The DCWPA prohibits, "threatening to take or taking a prohibited personnel action or otherwise retaliating against an employee because of the employee's protected disclosure . . ." D.C. Code § 1-615.53.27.1. § 1-615.52(a)(6).

51. Plaintiff was an "employee" of the District as defined by D.C. Code § 1-615.52(a)(3).

52. Plaintiff made "protected disclosures" by disclosing to supervisors, high-level executives, and a "public body," the Board of Ethics and Governance (BEGA) information that she reasonably believed evidenced gross mismanagement, abuse of authority, misuse or waste of public resources or funds . . . D.C. Code § 1-615.52.

53. Plaintiff's protected disclosures presented gross mismanagement, abuse of authority, misuse, or waste of public resources or funds. Plaintiff's protected disclosures were substantial factors that caused Defendant to engage in "prohibited personnel actions" by requesting Plaintiff resign, threatening disciplinary action, transferring Plaintiff to NBYDC, and constructively terminating Plaintiff because she made a protected disclosure . . . D.C. Code § 1-615.52.

54. Plaintiff would not have experienced these prohibited personnel actions, but for, her protected activity of reporting substantial discrepancies with the Agency's gift card program to her supervisors, executives, and BEGA. Therefore, by Defendant reassigning, transferring, reprimanding, and threatening other adverse personnel action against Plaintiff, Defendant violated the DCWPA.

DRAFT

**COUNT II**
**CONSTRUCTIVE TERMINATION**

55. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

56. Constructive termination occurs when the working conditions deteriorate, because of employer's conduct, to the point that they become "sufficiently extraordinary and egregious to

overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

57. Defendants' retaliatory and harassing conduct led to deteriorating working conditions, to the point that working for the defendant who requested Plaintiff's resignation, reassignment to a position with menial or no real duties, and opportunities for advancement. Also, Plaintiff's work environment consisted of threats, stalking, hacking, invasion of privacy, harassment, and humiliation by the employer was intentional and calculated to force the Plaintiff's resignation.

58. The work environment became sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve her employer.

59. Defendant's failure to address Plaintiff's repeated complaints about illegal and inappropriate personnel activity should have enabled District-defendant to foresee that its inaction would compel Plaintiff to leave.

60. Therefore, Defendant's conduct against Plaintiff for over three (3) years resulted in constructive termination.

DRAFT

**COUNT III**
**VIOLATIONS OF THE D.C. UNEMPLOYMENT ACT, D.C. CODE § 51-110 and**

61. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

62. The D.C. Unemployment Compensation Act (the "Act"), D.C. Code § 51-110(b), states, in part, an individual who is unemployed through no fault of her own is eligible to receive benefits from the District. D.C. Code § 51-110(b)

63. To be eligible, the Act requires that the claimant have sufficient earnings in the 12-month base period, be physically able to work; make a minimum of two (2) contacts for new work each week. D.C. Code § 51-109.

64. Plaintiff meets the statutory and regulatory requirements entitling her to regular unemployment compensation benefits.

65. The District has a duty to make timely determinations of benefits and timely payments for eligible claimants. Defendants violated D.C. Code by failing make timely determinations of benefits and timely payments to Plaintiff.

66. According to the OAH, a written determination notice is required in order to appeal an adverse decision. Defendants obstructed Plaintiff's right to and ability to file an appeal with OAH by failing to issue a written determination.

67. As a direct result of Defendants actions or inactions, Plaintiff has suffered and continues to suffer substantial harm.

**COUNT IV**
**SOCIAL SECURITY ACT, 42 U.S.C. § 503**

DRAFT

68. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

69. The District's unemployment compensation program is financed in part by federal grants under the Social Security Act, 42 U.S.C. § 503. Accordingly, the District's program must meet certain standards established by federal laws. The standards require the District to create provisions for "such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due" and that ensure the "opportunity for a fair hearing before an impartial tribunal for all individuals whose claims for unemployment are denied." 42 U.S.C. § 503(a)(1), (a)(3).

70. The District Defendants violated the Social Security Act, 42 U.S.C. § 503, (SSA) by failing to ensure Plaintiff received full benefits due.

71. Defendants also violated the SSA by interfering with Plaintiff's right to an administrative appeal of an adverse determination by failing to provide a written determination and by also disallowing Plaintiff to schedule a hearing with OAH without a written notice for over a year.

72. Defendants actions deprived Plaintiff of property without due process of law, and no other adequate remedy existed to vindicate the alleged violations of Plaintiff's rights.

73. As a direct result of Defendants' actions, Plaintiff has suffered economic and non-economic damages, thus entitling her to equitable and monetary relief.

**COUNT V**
**VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION**

74. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

75. The Due Process Clause of the Fifth Amendment, applicable to the District, states that no person shall "be deprived of life, liberty, or property, without due process of law."

76. Unemployment benefits are property rights protected by the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

DRAFT

77. Defendants have a duty under the Due Process Clause to provide affected beneficiaries with adequate notice of procedures and an opportunity to be heard.

78. Defendants have violated and continue to violate Plaintiff's rights by failing to timely pay benefits to eligible claimants or to provide a written determination notice, which OAH deems a prerequisite in order to file an administrative appeal.

79. Defendants actions or inactions have interfered with Plaintiff's right to receive benefits to which she is entitled. Defendants interfered with or obstructed Plaintiff's right to seek any administrative remedies for an indefinite period.

80. Defendants actions deprived Plaintiff of property without due process of law, and no other adequate remedy existed to vindicate the alleged violations of Plaintiff's rights.

81. As a direct result of Defendants' actions, Plaintiff has suffered economic and non-economic damages, thus entitling her to equitable and monetary relief.

**COUNT VI**
**VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT,**
**18 U.S.C. §§ 2721-2725**

82. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

83. The DPPA, in 18 U.S.C. § 2724(a) states, "a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under § 2721 shall be liable to the individual to whom the information pertains. 18 U.S.C. § 2724(a).

84. "Personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address, telephone number, and medical or disability information. 18 U.S.C. § 2725(3).

85. A "motor vehicle record" is any driver's license, motor vehicle title or registration, or DMV identification card for a purpose not permitted under any exception as set forth under 18 U.S.C. § 2725(1).

86. Defendants knowingly obtained, disclosed, or used Plaintiff's personal information from her motor vehicle record, for purposes not permitted under any exception as set forth under 18 U.S.C. § 2721 and therefore violated the DPPA.

87. As a result of the Defendants' conduct, Plaintiff has and continues to suffer harassment, risk of economic harm, or identity theft by virtue of her personal information from her motor vehicle record being impermissibly obtained, disclosed, or used by Defendants.

88. Plaintiff is entitled to: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation cost reasonably incurred, and (4) such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. § 2724(b).

**COUNT VII**
**VIOLATION OF THE FEDERAL WIRETAP ACT,**
**18 U.S.C. § 2511**

DRAFT

89. Plaintiff incorporates by reference the paragraphs as set forth herein.

90. The Federal Wiretap Act prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in the investigation of specified types of major crimes. 18 U.S.C. § 2511(a) and (b).

91. In violation of the Wiretap Act, Defendants intentionally intercepted Plaintiff's communications. Defendants also intentionally procured other people to intercept and endeavor to intercept such communications. Defendants did so by using concealed electronic recording devices that transmit such recordings through a wire, and these devices were transported through interstate commerce when purchased by Defendants and/or when transported to and installed in Plaintiff's homes and vehicles in Florida, Virginia, and the District of Columbia.

92. Defendants intentionally intercepted the oral and electronic communications when they directed others to record private conversations without her knowledge or consent, hacked Plaintiff's devices, and monitored contemporaneously transmitted emails. Plaintiff had every reason to believe the conversations would not be subject to interception since they took place inside Plaintiff's homes, and vehicles. 18 U.S.C. § 2511(2)(d).

DRAFT

93. Recordings were not covered by the consent exception because communications were intercepted for the primary purpose of committing criminal and tortious acts including but not limited to 1) mail fraud; 2) identity theft; 3) extortion; 4) stalking; and 5) unlawful entry; 6) intentional inflicting emotional distress or other harm. 18 U.S.C. § 2511(d).

94. Plaintiff suffered damages as a result of Defendants' violations, thus Plaintiff is entitled to seek injunctive relief, civil damages (including both actual and statutory damages), punitive damages, and reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

**COUNT VIII**
**VIOLATION OF THE STORED COMMUNICATIONS ACT,**
**18 U.S.C. § 2701**

95. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

96. The Stored Communications Act (SCA), 18 U.S.C. § 2701 prohibits intentionally accessing without authorization a facility through which an electronic communication service is provided; or intentionally exceeding an authorization to access that facility, and thereby obtaining, altering, or preventing authorized access to a wire or electronic communication while it is in electronic storage in such system. 18 U.S.C. § 2701(a).

97. Defendants violated the SCA by intentionally using illicit means, including spyware, malware, and theft to access Plaintiff's stored electronic communications on her devices without her knowledge or consent.

98. As a result of Defendants' conduct, Plaintiff was harmed.

99. The Defendants were not acting under any exception as set forth under 18 U.S.C. § 2701 and therefore violated the SCA.

100. Under 18 U.S.C. § 2707(b) and (c), Plaintiff is entitled to: (1) preliminary and other equitable or declaratory relief; (2) actual damages, no less than $1000, any profits made by the violator, punitive damages, and litigation costs reasonably incurred. 18 U.S.C. § 2707.

**COUNT IX**
**42 U.S.C. § 1983 FOURTH AMENDMENT VIOLATIONS**

101. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

102. The Fourth Amendment provides that people have a right to be secure in their persons against unreasonable searches and seizures, that warrants shall not be issued but upon probable cause, and that the place of the search must be described with particularity.

DRAFT

103. Defendants, acting under color of law, violated the Fourth Amendment to the U.S. Constitution, when they unreasonably searched and seized, and continue to search Plaintiff's homes, vehicles, devices and electronic records without a warrant or probable cause.

104. Defendant, while acting under color of law, knew or should have known that their impermissible searches and seizures violated Plaintiff's clearly established rights under the Fourth Amendment of the United States Constitution.

105. As a direct result of Defendants' actions, Plaintiff has suffered economic and non-economic damages, thus entitling her to equitable and monetary relief.

**COUNT X**
**42 U.S.C. § 1983 FIFTH AMENDMENT VIOLATIONS**

106. Defendant District of Columbia is a person acting under color of D.C. law within the meaning of 42 U.S.C. § 1983 as the administer of unemployment benefits.

107. Plaintiff has a property right in her unemployment benefits under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

108. Plaintiff, a former employee of the District, meets the statutory and regulatory requirements entitling her to unemployment compensation benefits in the District.

109. Defendant has a duty to provide Plaintiff with adequate notice of the reasons for denying her benefits. Defendants also have a duty to and adequate notice of procedures through which she can challenge any adverse determinations.

110. Defendants violated Plaintiff's Fifth Amendment rights under the Due Process Clause by failing to provide Plaintiff with by failing to pay Plaintiff her benefits, failing to provide adequate notice of their adverse decision, and failing to provide Plaintiff an opportunity be heard.

111. As a direct result of Defendants' actions, Plaintiff has suffered economic and non-economic damages, thus entitling her to equitable and monetary relief.

DRAFT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief: an award of back pay, front pay, punitive damages, and monetary damages in an amount to be determined at trial; all other relief that is available at law or equity, including litigation costs; issuance of an order of protection against individual defendants and those acting in concert or participation with them; enjoin enforcement of D.C. Official Code § 51–109, specifically by ordering the District to process Plaintiff's unemployment compensation claim or issue a written benefits determination to enable her to file an appeal.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 31, 2022

Respectfully submitted,

/s/ *Anesha Parker*

Anesha Parker
8402 Marlanas Place
Tampa, FL 33637
ARP928@hotmail.com

DRAFT

**CERTIFICATE OF SERVICE**

On October 31, 2022, a copy of the foregoing was served electronically and by U.S. First Class Mail to:

**DISTRICT OF COLUMBIA**
JAMES C. UNDERWOOD III
Assistant Attorney General
james.underwood@dc.gov

**UNITED STATES DEPARTMENT OF JUSTICE**
THOMAS W. DUFFEY
Assistant United States Attorney
Thomas.Duffey@usdoj.gov

DRAFT

/s/ *Anesha Parker*

Anesha Parker
8402 Marlanas Place
Tampa, FL 33637
ARP928@hotmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANESHA PARKER**,<br>*Plaintiff*,<br>v.<br>**DISTRICT OF COLUMBIA, *et al*.,**<br>*Defendants*. | **1:21-cv-02523 CKK** |

**ORDER**

Upon consideration of Plaintiff Anesha Parker's (Plaintiff) Motion In Opposition to District Of Columbia's Motion to Dismiss, the memorandum of points and authorities in support thereof, any opposition, reply, and the entire record, it is this __ day of _______________, 2022, hereby,

**ORDERED**: that the Plaintiff's Motion is **GRANTED** for the reasons set forth in the motion; and it is,

**ORDERED**: that Plaintiff's Whistleblower Protection Act, D.C. Code §§ 1-615.53, *et seq*. (DCWPA) (Count I) and Constructive Termination (Count II) claims against the District are **NOT DISMISSED**,

**SO ORDERED**.

________________________________

Judge Colleen Kollar-Kotelly
U.S. District Court for the District of Columbia

EXHIBIT 1

5:18
Account
Done
Apple ID
arp928@icloud.com
Password
Sign In
Could Not Sign In
The operation couldn't be completed. (AKAuthenticationError error -7003.)
OK





webs
web enabled benefit services

DOES Home | Unemployment Insurance FAQs

Home | Log Off

You are logged in as
**ANESHA PARKER**
**xxx-xx-1048**

**Date:** 10/29/2022
**Time:** 5:37:13 AM
**Day:** Saturday

> File Claims
> Payment History
> View Appeals
> 1099 Data
> Direct Deposit
> My Profile
> Message Inbox
> Contact Us

On Point Technology, Inc.

**This page displays information about the weeks for which the District of Columbia has received claim forms from you**

## Weeks Submitted Awaiting Processing

| Week Ending | Submitted Date/Time | Notes |
|---|---|---|
| None | | |

## Weeks Processed

(07/08)

| Week Ending (Fecha en que termina la semana reclamada) | Paid Date (Fecha de pago) | Paid Amount (Cantidad pagada) | Payment Method (Método de pago) | Filing Method (Método de someter solicitud) | Notes (Notas) |
|---|---|---|---|---|---|
| 05/07/2022 | | $0.00 | | Internet | Your claim has been received as of 5/9/2022. DOES will contact you if we need any additional information. |
| 04/30/2022 | | $0.00 | | Internet | Your claim has been received as of 5/1/2022. DOES will contact you if we need any additional information. |
| 04/23/2022 | | $0.00 | | Internet | Your claim has been received as of 4/24/2022. DOES will contact you if we need any additional information. |
| 04/16/2022 | | $0.00 | | Internet | Your claim has been received as of 4/18/2022. DOES will contact you if we need any additional information. |
| 04/09/2022 | | $0.00 | | Internet | Your claim has been received as of 4/13/2022. DOES will contact you if we need any additional information. |
| 03/05/2022 | | $0.00 | | Internet | Your claim has been received as of 3/6/2022. DOES will contact you if |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | we need any additional information. |
| 02/26/2022 | | $0.00 | | Internet | Your claim has been received as of 2/27/2022. DOES will contact you if we need any additional information. |
| 10/09/2021 | | $0.00 | | Internet | Your claim has been received as of 10/12/2021. DOES will contact you if we need any additional information. |

**Please Note: If you choose direct deposit, funds will normally be deposited into the account you have designated by the second business day after the date we have authorized benefit payment. For example, if we authorize benefit payments on Monday night, funds should be deposited in your account by Wednesday.**

**Please allow 10 calendar days for receipt of any benefit check. If a check is not received within 10 calendar days, please call 724-7000 or 1-877-319-7346. You may also call these numbers if you have any questions about the weeks shown above.**