UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANESHA PARKER,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 21-2523 (CKK) |

**MEMORANDUM OPINION**
(July 27, 2023)

Plaintiff Anesha Parker, who proceeds *pro se*, filed suit against the District of Columbia ("District Defendant") and three federal agencies, the United States Department of Justice, United States Department of Defense, and Central Intelligence Agency (collectively, "Federal Defendants"). *See generally* Second Am. Compl., ECF No. 17 ("Compl."). She brought claims against District Defendant under the following theories: D.C. Whistleblower Protection Act, D.C. Code §§ 1-615.53, *et seq.* (Count I); Constructive Termination (Count II); Driver's Privacy Protection Act, 18 U.S.C. § 2724 (Count III); Stored Communications Act, 18 U.S.C. § 2701 (Count IV); Federal Wiretap Act, 18 U.S.C. § 2511 (Count V); and 42 U.S.C. § 1983 for violations of the Fourth Amendment (Count VI). Plaintiff brought claims against Federal Defendants under the following theories: Driver's Privacy Protection Act (Count III), Stored Communications Act (Count IV), Federal Wiretap Act (Count V), 42 U.S.C. § 1983 for violations of the Fourth Amendment (Count VII), and Federal Tort Claims Act, 28 U.S.C. § 1346 (Count VII).

Now pending before the Court are the District Defendant's [24] Motion to Dismiss and Federal Defendants' [28] Motion to Dismiss. Upon consideration of the briefing[1], the relevant

---

[1] The Court's consideration has focused on the following:
- Plaintiff's Second Amended Complaint, ECF No. 17 ("Compl.");

authorities, and the record as a whole, the Court will **GRANT** both [24] and [28] Motions.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Further, because Plaintiff proceeds in this matter *pro se*, the Court must consider not only the facts alleged in Plaintiff's Complaint, but also the facts alleged in Plaintiff's briefs filed in response to the Motions to Dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("the Court, as it must in a case brought by a *pro se* plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss."). The Court recites only the background necessary for the Court's resolution of the pending Motions to Dismiss.

In broad strokes, Plaintiff's alleges that after she uncovered issues during an internal audit,

---

- Defendant District of Columbia's Motion to Dismiss, ECF No. 24 ("District Def.'s Mot.");
- Plaintiff's Response to Defendant District of Columbia's Motion to Dismiss, ECF No. 26 ("Pl.'s Opp'n to District Def.'s Mot.");
- Defendant District of Columbia's Reply in Support of their Motion to Dismiss, ECF No. 30 ("District Def.'s Reply");
- Errata to Federal Defendants' Motion to Dismiss, ECF No. 31 ("Fed. Defs.' Mot.");
- Plaintiff's Response to Federal Defendants' Motion to Dismiss, ECF No. 32 ("Pl.'s Opp'n to Fed. Defs.' Mot.");
- Federal Defendants' Reply in Support of their Motion to Dismiss, ECF No. 33 ("Fed. Defs.' Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

2

the District of Columbia and various federal government agencies retaliated against her, forcing her to leave her job, and then began a campaign of surveillance, stalking, extortion, and even poisoning. *See* Pl.'s Opp'n to District Def.'s Mot. at 2, 7; Pl.'s Opp'n to Fed. Defs.' Mot. at 2.

Plaintiff Anesha Parker was employed at the Department of Youth Rehabilitation Services ("DYRS") in Washington, D.C. as a Management and Program Analyst. Compl. ¶ 9. In this role, she was tasked with conducting an internal audit of DYRS's gift card distribution program after an external audit report revealed issues with the program. *Id.* ¶ 10. During her audit, she found that at least 695 gift cards, valued at $20,260, were unaccounted for and missing documentation of the youth-recipient. *Id.* ¶ 11. She reported these findings to DYRS executives and was asked to provide weekly updates over the next few months. *Id.* ¶¶ 12–13.

Shortly thereafter, Plaintiff was instructed to stop conducting the internal audit and call out sick from an upcoming check-in meeting; she was also encouraged to submit a letter of resignation. *Id.* ¶ 14. In April 2019, Plaintiff reported these issues to the Defendants, and the following month, they reassigned her to a different division. *Id.* ¶¶ 15–16. Defendants arranged for her and two other DYRS employees to present the results of the internal audit to the former director of DYRS. *Id.* ¶ 17. Then, on July 26, 2019, she was transferred locations to a center in Maryland. *Id.* ¶ 18.

On August 21, 2019, she was interviewed by investigators from the Board of Ethics and Government Accountability about the results of the internal audit and the requests for her resignation. *Id.* ¶ 19. On October 29, 2019, Defendants marked Plaintiff as absent without leave after learning of her participation in the investigation, although she was approved to work a flexible schedule to fulfill duties under her reassigned role. *Id.* ¶ 20. Plaintiff claims this was part of a "scheme to create a paper trail to terminate [her]." *Id.* ¶ 22. Later during the pandemic, Defendants reassigned her responsibilities to her colleagues. *Id.* ¶ 26.

Next, Plaintiff alleges that Roseberte Clervil, who Plaintiff claims is "a self-proclaimed spy for the Central Intelligence Agency" ("CIA") and employed by the U.S. Department of Defense ("DOD"), then "directed others to unlawfully enter[] Ms. Parker's home to install hidden recording devices owned by the U.S. government." *Id.* ¶¶ 5, 23. Clervil also allegedly "used her U.S. government credentials to claim[] Ms. Parker's cell phone from United Arab Emirates' lost [and] found." *Id.* Plaintiff submitted reports to the CIA and DOD about this but did not receive a response. *Id.*

Next, Plaintiff claims that Defendants began surveilling her through an array of methods. She says that they installed recording and tracking devices on her cars, *id.* ¶ 25; parked outside of her home, *id.* ¶ 27; followed her to and from the office to a new apartment, where they observed "unique items and private conversations," *id.* ¶¶ 28–29; watched her disrobe, *id.* ¶ 30; installed spyware or malware on her work and personal computers and cell phones to intercept, monitor, and record her electronic communications, *id.* ¶ 37; gained unauthorized access to her internal routers, personal contacts, social media accounts, email accounts, bank accounts, and rideshare accounts, *id.* ¶ 38; and linked her Apple watch to Defendants' television to eavesdrop on private conversations, *id.* She reported some of her concerns to Defendants and requested permission to telework for her safety, but they denied her request. *Id.* ¶ 32. Plaintiff alleges that Defendants disseminated the information unlawfully gathered about her among her friends, family, and colleagues. *Id.* at ¶ 40. She also claims that Defendants "cancelled and transferred [her] Florida driver's license out of the state in 2020." *Id.* ¶ 39.

In September 2021, Defendants again marked Plaintiff as absent without leave, made suggestive remarks about giving her a poor performance evaluation, and withheld a promotion and pay increase. *Id.* ¶¶ 34–35. Plaintiff alleges that "[a]s a result of Defendants' actions, [she] felt

4

left with no alternative except to resign from DYRS." *Id.* ¶ 39.  She claims that after she resigned and relocated to Florida, Defendants continued to retaliate against her and violate her rights.  *Id.* ¶ 43.  She claims that they intercepted her mail, including tax returns, laced her food and drink with opiates, and engaged in "ongoing gang-stalking, intimidation, threats and harassment" such that Plaintiff does not leave her home out of fear.  *Id.* ¶¶ 44–47.  Plaintiff also states that Clervil has continued to interfere with her by trying to watch Plaintiff sleep after providing her with opiate-laced meals, pretending to disconnect her cell service provider, and causing a tow company to pretend to repossess her vehicle.  *Id.* ¶¶ 48–49.

Plaintiff initially filed suit in September 2021, *see* ECF No. 1, before filing an Amended Complaint in June 2022, *see generally* Compl.  She alleges claims against District Defendant under the following theories: D.C. Whistleblower Protection Act, D.C. Code §§ 1-615.53, *et seq.* (Count I); Constructive Termination (Count II); Driver's Privacy Protection Act, 18 U.S.C. § 2724 (Count III); Stored Communications Act, 18 U.S.C. § 2701 (Count IV); Federal Wiretap Act, 18 U.S.C. § 2511 (Count V); and 42 U.S.C. § 1983 for violations of the Fourth Amendment (Count VI).  Plaintiff brought claims against Federal Defendants under the following theories: Driver's Privacy Protection Act (Count III), Stored Communications Act (Count IV), Federal Wiretap Act (Count V), 42 U.S.C. § 1983 for violations of the Fourth Amendment (Count VII), and Federal Tort Claims Act, 28 U.S.C. § 1346 (Count VII).  Plaintiff sued other parties as well, including Roseberte Clervil, who have since been dismissed from the action.  *See* Order, ECF No. 11 (dismissing Defendant Department of Youth Rehabilitation Services); Order, ECF No. 16 (dismissing Defendant Krista Scalise); Order, ECF No. 22 (dismissing Defendant Roseberte Clervil).

Defendant District of Columbia filed a Motion to Dismiss in October 2022, *see* District Def.'s Mot., shortly followed by the Federal Defendants' filing of a Motion to Dismiss in

November 2022, *see* Fed. Defs.' Mot.  Both Motions are now ripe for the Court's consideration.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

## III. DISCUSSION

The Court begins by addressing the District of Columbia's Motion to Dismiss before turning to the Motion to Dismiss filed by the United States Department of Justice, United States Department of Defense, and Central Intelligence Agency.

### A. Defendant District of Columbia's Motion to Dismiss

Plaintiff is suing Defendant District of Columbia under six theories: D.C. Whistleblower Protection Act ("DCWPA"), D.C. Code §§ 1-615.53, *et seq.* (Count I); Constructive Termination

(Count II); Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2724 (Count III); Stored Communications Act ("SCA"), 18 U.S.C. § 2701 (Count IV); Federal Wiretap Act ("FWA"), 18 U.S.C. § 2511 (Count V); and 42 U.S.C. § 1983 for violations of the Fourth Amendment (Count VI).

Defendant District of Columbia raises two arguments in support of dismissal: first, that Plaintiff's federal and constitutional claims should fail, as they are "patently insubstantial and involve bizarre conspiracy theories," and second, that the Court should decline supplemental jurisdiction on the remaining state law claims. District Def.'s Mot. at 1. The Court addresses these two arguments in turn.

**1. Plaintiff's Federal and Constitutional Claims**

Of Plaintiff's six claims against District Defendant, four are federal or constitutional claims: DPPA, SCA, FWA, and 42 U.S.C. § 1983. As for her DPPA claim, Plaintiff argues that Defendants have knowingly obtained, disclosed, or used her personal information from a motor vehicle record in an unlawful manner. Compl. ¶ 66. Next, to support her SCA claim, Plaintiff states that "Defendants violated the SCA by intentionally using illicit means, including spyware, malware, and device theft to access Plaintiff's stored electronic communications on her personal and work devices without her knowledge or consent." *Id.* ¶ 71. Defendants' alleged FWA violation was "intentionally intercept[ing] Plaintiff's communications at her workplace, home and private vehicle," "procur[ing] other people to intercept and to endeavor to intercept such communications," "using concealed electronic recording devices that transmit such recordings through a wire or by radio," "direct[ing] others to record private conversations without her knowledge or consent," "hack[ing] Plaintiff's devices," "monitor[ing] contemporaneously transmitted emails," and "plac[ing] listening devices in Plaintiff's homes and vehicles." *Id.* ¶¶

78–79.  Finally, Plaintiff states that District Defendant's actions, including "unlawfully entering Plaintiff's homes in Virginia; installing government-issued recording and tracking devices in Plaintiff's homes and vehicles; hacking and/or cloning Plaintiff's phone; monitoring Plaintiff's phone calls and text messages; recording Plaintiffs' communications without a warrant and where no party to the communication consented to the recording; [and] recording in homes and other places where Plaintiff had a reasonable expectation of privacy against video and audio recording," were a violation of her Fourth Amendment rights.  *Id.* ¶ 84.

District Defendant argues that these claims must be dismissed because they are predicated on Plaintiff's insubstantial conspiracy theories.  The Court agrees.

District courts lack jurisdiction where a plaintiff's complaint is "'patently insubstantial,' presenting no federal question suitable for decision."  *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 427 n.6 (1989)); *see also Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) ("Over the years, this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'") (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)).  More specifically, a court may dismiss claims that are "essentially fictitious"—for example, when they suggest "bizarre conspiracy theories… [or] fantastic government manipulations."  *Best*, 39 F.3d at 330–31.  Judges of this court have routinely dismissed cases in which plaintiffs allege similar conspiracy theories involving government surveillance or harassment.  *See Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) (collecting cases dismissed for "for patent insubstantiality").[2]  Where, as here, a

---

[2] For other examples, see *Roum v. Fenty*, 697 F. Supp. 2d 39, 42–43 (D.D.C. 2010) (HHK) (dismissing claims involving alleged government conspiracy where federal agencies tapped plaintiff's phones, monitored conversations, tracked him, and used "various chemicals and

9

plaintiff offers only "a laundry list of wrongful acts and conclusory allegations to support her theory of a conspiracy," such allegations are "insufficient to allow the case to go forward." *Richards v. Duke University*, 480 F. Supp. 2d 222, 233 (D.D.C. 2007) (RCL).

Plaintiff's DPPA, SCA, FWA, and § 1983 claims allege the exact sort of "bizarre conspiracy theories" that must be dismissed for lack of subject matter jurisdiction. These federal and constitutional law claims are predicated on allegations that, among others, Defendants installed recording and tracking devices on Plaintiff's cars, installed spyware or malware on her computers and cellphones to intercept communications, and gained access to her social media accounts, bank accounts, and more. Compl. ¶¶ 25, 37, 38. She presents no additional information nor evidence to support these allegations, but instead rattles off a list of supposed government actions taken as part of their campaign against her. Plaintiff acknowledges that "her astonishing… tale of cross-country monitoring, extortion, and poisoning by District of Columbia… officials… may sound unbelievable," but then doubles down that "the facts ring

---

technologies to regularly conduct experiments and surveillance on him over a period spanning more than ten years"); *Roum v. Bush*, 461 F. Supp. 2d 40, 46–47 (D.D.C. 2006) (RMC) (dismissing "inherently unrealistic" claims that alleged a government conspiracy to use radioactive waves and lethal chemicals to attempt to kill the plaintiff); *Walsh v. Hagee*, 900 F. Supp. 2d 51, 54, 58–60 (D.D.C. 2012) (dismissing plaintiff's claim because it stemmed "from the frivolous allegation of a widespread government conspiracy involving government surveillance and fanatical meddling" and to "harass and assault his family"); *Curran v. Holder*, 626 F. Supp. 2d 30, 33–34 (D.D.C. 2009) (PLF) (dismissing case where "[p]laintiff's complaint strings together a series of unconnected events to support her conclusion that she has been singled out for harassment by the government" and surveillance); *Tartt v. United States*, No. 19-1615 (TJK), 2019 WL 5328737, at *1–3 (D.D.C. Oct. 12, 2019) (dismissing case where plaintiff alleges, among other claims, that the United States abused and tortured him with radio frequency implant devices); *Bickford v. Gov't of U.S.*, 808 F. Supp. 2d 175, 181–82 (D.D.C. 2011) (PLF) (dismissing plaintiff's "government torture, surveillance, and harassment" claims under Rule 12(b)(1)); *Newby v. Obama*, 681 F. Supp. 2d 53, 55–56 (D.D.C. 2010) (EGS) (dismissing claims involving government surveillance and stalking); *Riles v. Giethner*, 693 F. Supp. 2d 1, 3 (D.D.C. 2009) (PLF) (dismissing case where plaintiff alleges the government was monitoring his thoughts, among other allegations).

true."  Pl.'s Opp'n to District Def.'s Mot. at 1.

Although the Court is mindful that a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C.Cir. 2008) (internal quotations and citation omitted), Plaintiff's Complaint falls far short of the required threshold to survive District Defendant's Motion to Dismiss due to its insubstantial and fictitious claims.  Accordingly, the Court will **GRANT** Defendant District of Columbia's [24] Motion to Dismiss Counts III, IV, V, and VI.

### 2. Supplemental Jurisdiction

Now that Plaintiff's federal and constitutional law claims have been dismissed, Plaintiff's two remaining claims against Defendant District of Columbia are for violation of the DCWPA and Constructive Termination.  District Defendant requests that the Court decline to exercise jurisdiction over these state law claims.  District Def.'s Mot. at 6–7.  The Court, again, agrees.

A federal district court may exercise supplemental jurisdiction over state law claims if they are "so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).  However, a court's decision to exercise supplemental jurisdiction is discretionary, *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), and a "district court[ ] may decline to exercise supplemental jurisdiction over a claim… if… the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims*." Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

11

Here, the Court in its discretion will, considering the balance of factors, dismiss Plaintiff's remaining state law claims.  The Court has dealt with these claims only in the context of the instant Motions to Dismiss, and the parties have not yet engaged in any discovery in connection with this action.  There exists no reason to believe that the parties or potential witnesses would be inconvenienced by trying this matter in D.C. Superior Court.  Nor is there reason to believe Plaintiff will be prejudiced, as all statute of limitations periods relevant to her state law claims have been tolled while this case is pending and will remain tolled for thirty days after this Order.  *See* 28 U.S.C. § 1367(d).  Furthermore, principles of comity weigh in favor of allowing local District of Columbia courts to decide matters of District of Columbia law.  *Lowe v. District of Columbia*, 669 F.Supp.2d 18, 31–31 (D.D.C. 2009) (CKK) ("[I]n the interests of comity, federal judges should refrain from deciding cases founded solely on local law when the requirements for diversity jurisdiction are not present.") (quoting *Mitchell v. Yates*, 402 F. Supp. 2d 222, 235 (D.D.C. 2005) (JDB)).  Finally, using the judicial resources of the federal courts to try local claims is not in the interest of judicial economy.

Accordingly, in its discretion, the Court finds that all of the relevant considerations weigh in favor of the Court declining to exercise jurisdiction over the state law claims.  The Court will therefore **GRANT** Defendant District of Columbia's [24] Motion to Dismiss Counts I and II.

\*     \*     \*

As explained above, the Court **GRANTS** Defendant District of Columbia's [24] Motion to Dismiss in its entirety.

### A. Federal Defendants' Motion to Dismiss

Plaintiff is also suing Defendants United States Department of Justice, United States

Department of Defense, and Central Intelligence Agency under four theories: Driver's Privacy Protection Act (Count III), Stored Communications Act (Count IV), Federal Wiretap Act (Count V), 42 U.S.C. § 1983 for violations of the Fourth Amendment (Count VII), and Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 (Count VII). Plaintiffs' support for her DPPA, SCA, FWA, and § 1983 claims were included above in the context of the District Defendants' Motion to Dismiss. As for her FTCA claim, Plaintiff alleges that "[t]he conduct of the CIA/DoD employees acts were intentional overt act[s] to deprive Plaintiff of her right to possession of her cell phone, emails, and driver's license." Compl. ¶ 91.

The Federal Defendants argue that Plaintiffs' claims should be dismissed under Federal Rules of Procedure 12(b)(1) and 12(b)(6). The Court agrees.

For same reasons stated above when discussing the District Defendants' Motion to Dismiss Plaintiff's DPPA, SCA, and FWA claims, the Court holds that Plaintiff's claims brought against Federal Defendants under the same theories of liability are "bizarre conspiracy theories" that must be dismissed. Plaintiff contends that they are "not the type of irrational, frivolous, and insubstantial claims warranting dismissal," Pl.'s Opp'n to Fed. Defs.' Mot, but case law cuts clearly the other way. The Court finds that the same analysis applies to Plaintiff's FTCA claims as well.

The Court **GRANTS** the Federal Defendants' [28] Motion to Dismiss in its entirety.

### IV. CONCLUSION

For the reasons set forth above, the Court shall **GRANT** both [24] and [28] Motions to Dismiss and **DISMISS** Plaintiffs' [17] Complaint in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

                                          /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge